BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
Assistant United States Attorney
Chief, Terrorism and Export Crimes Section
HAOXIAOHAN CAI (Cal. Bar No. 331131)
Assistant United States Attorney
Major Frauds Section
1500/1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone:    (213) 894-3667/0762
Facsimile:    (213) 894-0141
E-mail:   Ian.Yanniello@usdoj.gov
          Haoxiaohan.Cai@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>SALVADOR PLASENCIA,<br>   aka "Dr. P,"<br><br>       Defendant. | No. CR 24-236(A)-SPG-2<br><br>PLEA AGREEMENT FOR DEFENDANT<br>SALVADOR PLASENCIA |

1.   This constitutes the plea agreement between SALVADOR PLASENCIA ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

1

<u>DEFENDANT'S OBLIGATIONS</u>

2      2.   Defendant agrees to:

3          a.   At the earliest opportunity requested by the USAO and

4  provided by the Court, appear and plead guilty to Counts Six, Eight,

5  Nine, and Ten of the first superseding indictment in <u>United States v.</u>

6  <u>Salvador Plasencia</u>, CR No. 23-236(A)-SPG-2, which each charge

7  defendant with distribution of ketamine, in violation of 21 U.S.C. §§

8  841(a)(1), (b)(1)(E)(i).

9          b.   Not contest facts agreed to in this agreement.

10         c.   Abide by all agreements regarding sentencing contained

11  in this agreement.

12         d.   Appear for all court appearances, surrender as ordered

13  for service of sentence, obey all conditions of any bond, and obey

14  any other ongoing court order in this matter.

15         e.   Not commit any crime; however, offenses that would be

16  excluded for sentencing purposes under United States Sentencing

17  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

18  within the scope of this agreement.

19         f.   Be truthful at all times with the United States

20  Probation and Pretrial Services Office and the Court.

21         g.   Pay the applicable special assessments at or before

22  the time of sentencing unless defendant has demonstrated a lack of

23  ability to pay such assessments.

24              <u>THE USAO'S OBLIGATIONS</u>

25      3.   The USAO agrees to:

26         a.   Not contest facts agreed to in this agreement.

27         b.   Abide by all agreements regarding sentencing contained

28  in this agreement.

1        c.   At the time of sentencing, move to dismiss the

2   remaining counts of the first superseding indictment as against

3   defendant.  Defendant agrees, however, that at the time of sentencing

4   the Court may consider any dismissed charges in determining the

5   applicable Sentencing Guidelines range, the propriety and extent of

6   any departure from that range, and the sentence to be imposed.

7        d.   At the time of sentencing, provided that defendant

8   demonstrates an acceptance of responsibility for the offenses up to

9   and including the time of sentencing, recommend a two-level reduction

10  in the applicable Sentencing Guidelines offense level, pursuant to

11  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

12  additional one-level reduction if available under that section.

13       e.   Except for criminal tax violations (including

14  conspiracy to commit such violations under 18 U.S.C. § 371), the

15  government agrees not to further criminally prosecute the defendant

16  for any offenses arising out of the defendant's conduct related to

17  Victim M.P. and any money received in connection with that conduct.

18  Defendant understands that the USAO is free to criminally prosecute

19  defendant for any other unlawful past conduct or any unlawful conduct

20  that occurs after the date of this agreement.  Defendant agrees that

21  at the time of sentencing the Court may consider the uncharged

22  conduct in determining the applicable Sentencing Guidelines range,

23  the propriety and extent of any departure from that range, and the

24  sentence to be imposed after consideration of the Sentencing

25  Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

26  <u>NATURE OF THE OFFENSES</u>

27  4.   Defendant understands that for defendant to be guilty of

28  the crimes charged in Counts Six, Eight, Nine, and Ten, that is,

distribution of ketamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(E)(i), the following must be true: (1) defendant knowingly distributed ketamine; (2) defendant knew that it was ketamine or some other federally controlled substance; (3) defendant acted outside the scope of professional practice; and (4) defendant acted without a legitimate medical purpose.

<u>PENALTIES</u>

5.   Defendant understands that the statutory maximum sentence that the Court can impose for each violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(E)(i), is: 10 years imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 40 years imprisonment; a 3-year period of supervised release; a fine of $2,000,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $400.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

8.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

9.    Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

10.    Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty

1    in this case.  Defendant further understands that removal and

2    immigration consequences are the subject of a separate proceeding and

3    that no one, including his attorney or the Court, can predict to an

4    absolute certainty the effect of his convictions on his immigration

5    status.  Defendant nevertheless affirms that he wants to plead guilty

6    regardless of any immigration consequences that his pleas may entail,

7    even if the consequence is automatic removal from the United States.

8         11.  Defendant understands that defendant will be required to

9    pay full restitution to the victim of the offenses to which defendant

10   is pleading guilty, that is, Victim M.P.  Defendant agrees that, in

11   return for the USAO's compliance with its obligations under this

12   agreement, the Court may order restitution to persons other than the

13   victims of the offenses to which defendant is pleading guilty and in

14   amounts greater than those alleged in the counts to which defendant

15   is pleading guilty.  In particular, defendant agrees that the Court

16   may order restitution to any victim of any of the following for any

17   losses suffered by that victim as a result: (a) any relevant conduct,

18   as defined in U.S.S.G. § 1B1.3, in connection with the offenses to

19   which defendant is pleading guilty and (b) any counts dismissed

20   pursuant to this agreement as well as all relevant conduct, as

21   defined in U.S.S.G. § 1B1.3, in connection with those counts.

22                              FACTUAL BASIS

23        12.  Defendant admits that defendant is, in fact, guilty of the

24   offenses to which defendant is agreeing to plead guilty.  Defendant

25   and the USAO agree to the statement of facts provided below and agree

26   that this statement of facts is sufficient to support pleas of guilty

27   to the charges described in this agreement and to establish the

28   Sentencing Guidelines factors set forth in paragraphs 14 and 15 below

                                    6

but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

At all relevant times to this factual basis, defendant was a medical doctor licensed to practice in the State of California. Defendant operated and was the owner of an urgent care clinic, Malibu Canyon Urgent Care LLC, located in Malibu, California.  Defendant had also applied for and obtained authorization from the Drug Enforcement Administration ("DEA") to dispense, administer, and prescribe narcotics and other controlled substances, so long as such prescriptions were for a legitimate medical purpose and within the scope of professional medical practice.

As a medical doctor, defendant knew that ketamine was a Schedule III controlled substance as well as a dissociative anesthetic. Defendant knew that some medical providers used ketamine off-label to treat depression and other psychiatric conditions, and that such treatments were not approved by the Food and Drug Administration. At all relevant times, defendant knew about potential risks associated with ketamine, including sedation, dissociation, psychiatric events, abuse and misuse by patients, among others. As defendant's treatment notes reflected, defendant also believed that patients "should be monitored by [a] physician when undergoing treatment as a safety measure."

On September 30, 2023, defendant was introduced to Victim M.P. by one of defendant's own patients who stated that Victim M.P. was a "high profile person" who was seeking ketamine and was willing to pay "cash and lots of thousands" for ketamine treatment. Defendant subsequently contacted Victim M.P. and requested a telehealth visit.

Defendant and Victim M.P. spoke by phone and continued to exchange text communications about Victim M.P.'s request for ketamine.

The same day that defendant was introduced to Victim M.P., defendant contacted Mark Chavez ("Defendant Chavez"), a medical doctor who defendant knew had previously owned a ketamine clinic, to discuss Victim M.P.'s request for ketamine. After defendant Chavez confirmed he had ketamine vials and lozenges that he could immediately sell to defendant, defendant informed Victim M.P. that he could provide him with 9, "maybe 18," doses of ketamine.  Victim M.P. and defendant agreed that defendant would deliver the ketamine to Victim M.P.'s residence.  In response to Victim M.P. asking whether defendant would stay to administer the ketamine, defendant responded: "I will give you first dose if you would like and leave supplies with you."

To obtain ketamine for Victim M.P., defendant traveled to Costa Mesa to purchase ketamine from Defendant Chavez. Defendant Chavez sold defendant four vials of liquid ketamine, an open box of ketamine lozenges that had been previously prescribed to a patient whom defendant did not know, as well as gloves and syringes.  Defendant paid Defendant Chavez $795.

Defendant then traveled to Victim M.P.'s residence, in the Central District of California, where he injected ketamine into Victim M.P. and left at least one vial of ketamine with Kenneth Iwamasa ("Defendant Iwamasa"), Victim M.P.'s personal assistant. Defendant Iwamasa paid defendant approximately $4,500.

On October 2, 2023, defendant again administered ketamine to Victim M.P. at his residence. Defendant left additional liquid ketamine and ketamine lozenges with Defendant Iwamasa, knowing that

Defendant Iwamasa did not have medical training and would be administering the ketamine to Victim M.P. without defendant present.

On October 4, 2023, Defendant Iwamasa sent a text message to defendant indicating that Victim M.P. had run out of ketamine and needed more. In response, defendant confirmed he could deliver more ketamine later that day. Defendant subsequently obtained eight vials of ketamine from Defendant Chavez and traveled to Victim M.P.'s residence where he administered ketamine to Victim M.P. Defendant left additional ketamine vials and lozenges with Defendant Iwamasa to administer to Victim M.P. at a later time. In exchange, defendant was paid approximately $3,000.

On October 6, 2023, Defendant Iwamasa sent a text message to defendant asking if he could bring the remaining ketamine and supplies to Victim M.P. Defendant then traveled to Victim M.P.'s residence where defendant administered ketamine and left additional vials of ketamine with Defendant Iwamasa. In exchange, defendant was paid approximately $12,000.

On October 7, 2023, Defendant Iwamasa informed defendant in text messages that he "just ran out" of ketamine and requested more.  At approximately 11:29 p.m., defendant responded by text, stating he had two ketamine vials available and offered to meet Defendant Iwamasa in Santa Monica, noting: "Im at third street promenade now . . . If You would like to meet now." On October 8, 2023, at approximately 12:30 a.m., Defendant Iwamasa met defendant near the Third Street Promenade in Santa Monica to obtain vials of ketamine for Victim M.P., for which Defendant received payment.

On October 10, 2023, Defendant Iwamasa contacted defendant and requested additional ketamine for Victim M.P. and asked if defendant

could meet defendant Iwamasa and Victim M.P. in Long Beach, California. Defendant then traveled to a public parking lot at the Long Beach Aquarium, where he administered ketamine to Victim M.P. while in the backseat of Victim M.P.'s vehicle. Defendant also left additional vials of ketamine with Defendant Iwamasa. Defendant Iwamasa paid defendant approximately $6,500.

On October 12, 2023, Defendant Iwamasa again contacted defendant on behalf of Victim M.P. and asked defendant to deliver more ketamine. Defendant traveled to Victim M.P.'s residence where he administered ketamine to Victim M.P. During the treatment, Victim M.P.'s blood pressure spiked causing Victim M.P. to freeze up. Notwithstanding Victim M.P.'s reaction, defendant left additional vials of ketamine with Defendant Iwamasa, knowing that Defendant Iwamasa would inject the ketamine into Victim M.P.

Defendant subsequently placed an order for ten vials of ketamine through a licensed pharmaceutical company using his DEA license. After receiving the ketamine, on October 27, 2023, defendant sent the following text message to Defendant Iwamasa: "I know you mentioned taking a break. I have been stocking up on the meanwhile. I am not sure when you guys plan to resume but in case its when im out of town this weekend I have left supplies with a nurse of mine ...I can always let her know the plan."

The following day, on October 28, 2023, Victim M.P. died from the acute effects of ketamine. The ketamine that caused Victim M.P.'s death was not provided by defendant.

In total, between September 30, 2023, and October 12, 2023, defendant distributed twenty 5ml (100mg/ml) vials of ketamine, less than a full package of ketamine lozenges, and syringes, to Defendant

Iwamasa and Victim M.P. Defendant admits that his conduct fell below the proper standard of medical care and that transfers of ketamine vials to Defendant Iwamasa and Victim M.P. were not for a legitimate medical purpose.

*    *    *

In connection with a federal investigation into defendant's distribution of ketamine to Victim M.P., law enforcement personnel executed search warrants at two residences associated with defendant on January 25, 2024. Concurrently, Special Agents with the Drug Enforcement Administration served a subpoena for records from defendant's medical clinic, Malibu Canyon Urgent Care, relating to Victim M.P., including any and all medical records and notes.

Prior to receiving the subpoena, defendant failed to maintain adequate medical records documenting medical treatment of Victim M.P., including the various transfers of ketamine described above.

On or before March 1, 2024, in response to the subpoena, defendant failed to provide all original medical records related to Victim M.P. and knowingly provided incomplete and inaccurate medical records, including records that defendant modified after receiving the subpoena.

At the time defendant took these actions, defendant intended to influence the government's investigation into his distribution of ketamine to Victim M.P. and Defendant Iwamasa, which is a matter within the jurisdiction of a department or agency of the United States, namely, the United States Attorney's Office for the Central District of California and the Drug Enforcement Administration.

1

<u>SENTENCING FACTORS</u>

2    13.  Defendant understands that in determining defendant's

3    sentence the Court is required to calculate the applicable Sentencing

4    Guidelines range and to consider that range, possible departures

5    under the Sentencing Guidelines, and the other sentencing factors set

6    forth in 18 U.S.C. § 3553(a).  Defendant understands that the

7    Sentencing Guidelines are advisory only, that defendant cannot have

8    any expectation of receiving a sentence within the calculated

9    Sentencing Guidelines range, and that after considering the

10   Sentencing Guidelines and the other § 3553(a) factors, the Court will

11   be free to exercise its discretion to impose any sentence it finds

12   appropriate up to the maximum set by statute for the crimes of

13   conviction.

14   14.  Pursuant to U.S.S.G. §§ 1B1.2(a) and (c), the parties

15   stipulate that defendant's conduct described on lines 6-26 of Page 11

16   satisfies the elements of an offense that is a more serious offense

17   than the offenses of conviction for purposes of calculating the

18   applicable Sentencing Guidelines offense level.  Accordingly,

19   pursuant to U.S.S.G. §§ 2D1.1(a)(2), 1B1.2(a), and 1B1.2(c), the

20   parties stipulate that the Court should calculate the Sentencing

21   Guidelines with respect to this conduct and apply a base offense

22   level 14.  The parties further stipulate that application of such a

23   base offense level, which is greater than the base offense level that

24   would otherwise apply, is independently supported by U.S.S.G.

25   § 5K2.1.  Defendant will not recommend, argue, or otherwise suggest

26   that the Court impose a base offense level other than 14.

27   15.  Defendant and the USAO agree to the following applicable

28   Sentencing Guidelines factors:

<u>Counts Six, Eight, Nine, Ten</u>

Base Offense Level:      6   [U.S.S.G. §§ 2D1.1(a)(5) &

189 Units of Ketamine            (c)(17)]

<u>Pseudo Count</u>

Base Offense Level:      14    [U.S.S.G. § 2J1.2(a)]

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

16.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18.  Defendant understands that by pleading guilty, defendant gives up the following rights:

     a.    The right to persist in a plea of not guilty.

     b.    The right to a speedy and public trial by jury.

     c.    The right to be represented by counsel –– and if necessary have the Court appoint counsel –– at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel –– and if necessary have the Court appoint counsel –– at every other stage of the proceeding.

     d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

19.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

20.    Defendant agrees that, provided the Court imposes a total term of imprisonment within or below the range corresponding to an offense level of 15 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment

imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

21.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

22.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 15 and the criminal history calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

1

## RESULT OF WITHDRAWAL OF GUILTY PLEA

2  23.  Defendant agrees that if, after entering a guilty pleas
3  pursuant to this agreement, defendant seeks to withdraw and succeeds
4  in withdrawing defendant's guilty pleas on any basis other than a
5  claim and finding that entry into this plea agreement was
6  involuntary, then (a) the USAO will be relieved of all of its
7  obligations under this agreement; and (b) should the USAO choose to
8  pursue any charge or any civil, administrative, or regulatory action
9  that was either dismissed or not filed as a result of this agreement,
10  then (i) any applicable statute of limitations will be tolled between
11  the date of defendant's signing of this agreement and the filing
12  commencing any such action; and (ii) defendant waives and gives up
13  all defenses based on the statute of limitations, any claim of pre-
14  indictment delay, or any speedy trial claim with respect to any such
15  action, except to the extent that such defenses existed as of the
16  date of defendant's signing this agreement.

17

## EFFECTIVE DATE OF AGREEMENT

18  24.  This agreement is effective upon signature and execution of
19  all required certifications by defendant, defendant's counsel, and an
20  Assistant United States Attorney.

21

## BREACH OF AGREEMENT

22  25.  Defendant agrees that if defendant, at any time after the
23  signature of this agreement and execution of all required
24  certifications by defendant, defendant's counsel, and an Assistant
25  United States Attorney, knowingly violates or fails to perform any of
26  defendant's obligations under this agreement ("a breach"), the USAO
27  may declare this agreement breached.  All of defendant's obligations
28  are material, a single breach of this agreement is sufficient for the

USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

26. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any

evidence derived from the statements should be suppressed or are
inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

### OFFICE NOT PARTIES

27. Defendant understands that the Court and the United States
Probation and Pretrial Services Office are not parties to this
agreement and need not accept any of the USAO's sentencing
recommendations or the parties' agreements to facts or sentencing
factors.

28. Defendant understands that both defendant and the USAO are
free to: (a) supplement the facts by supplying relevant information
to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 16 are
consistent with the facts of this case.  While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

29. Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the

1   maximum established by statute, defendant cannot, for that reason,

2   withdraw defendant's guilty pleas, and defendant will remain bound to

3   fulfill all defendant's obligations under this agreement.  Defendant

4   understands that no one -- not the prosecutor, defendant's attorney,

5   or the Court -- can make a binding prediction or promise regarding

6   the sentence defendant will receive, except that it will be between

7   the statutory mandatory minimum and the statutory maximum.

8                        <u>NO ADDITIONAL AGREEMENTS</u>

9        30.  Defendant understands that, except as set forth herein,

10  there are no promises, understandings, or agreements between the USAO

11  and defendant or defendant's attorney, and that no additional

12  promise, understanding, or agreement may be entered into unless in a

13  writing signed by all parties or on the record in court.

14  //

15  //

16  //

1    <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2        31.  The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    BILAL A. ESSAYLI
     United States Attorney

9

10   _Ian Yanniello_____          6/13/2025

     IAN V. YANNIELLO                          Date
11   HAOXIAOHAN CAI
     Assistant United States Attorneys

12   _u_____          _6/13/25_____

13   SALVADOR PLASENCIA                        Date
     Defendant

14   _Debra White_____          _6/13/25_____

15   DEBRA S. WHITE                            Date
     KAREN L. GOLDSTEIN
16   Attorneys for Defendant SALVADOR
     PLASENCIA

17

18              <u>CERTIFICATION OF DEFENDANT</u>

19       I have read this agreement in its entirety.  I have had enough

20   time to review and consider this agreement, and I have carefully and

21   thoroughly discussed every part of it with my attorneys.  I

22   understand the terms of this agreement, and I voluntarily agree to

23   those terms.  I have discussed the evidence with my attorneys, and my

24   attorneys have advised me of my rights, of possible pretrial motions

25   that might be filed, of possible defenses that might be asserted

26   either prior to or at trial, of the sentencing factors set forth in

27   18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions,

28   and of the consequences of entering into this agreement.  No

                              20

1  promises, inducements, or representations of any kind have been made
2  to me other than those contained in this agreement. No one has
3  threatened or forced me in any way to enter into this agreement. I
4  am satisfied with the representation of my attorneys in this matter,
5  and I am pleading guilty because I am guilty of the charges and wish
6  to take advantage of the promises set forth in this agreement, and
7  not for any other reason.

8

9

10  _____        _6/13/25_____
    SALVADOR PLASENCIA              Date
    Defendant
11

12

13

14

15

16

17            CERTIFICATION OF DEFENDANT'S ATTORNEYS

18       I am SALVADOR PLASENCIA's attorney. I have carefully and
19  thoroughly discussed every part of this agreement with my client.
20  Further, I have fully advised my client of his rights, of possible
21  pretrial motions that might be filed, of possible defenses that might
22  be asserted either prior to or at trial, of the sentencing factors
23  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
24  provisions, and of the consequences of entering into this agreement.
25  To my knowledge: no promises, inducements, or representations of any
26  kind have been made to my client other than those contained in this
27  agreement; no one has threatened or forced my client in any way to
28  enter into this agreement; my client's decision to enter into this

1   agreement is an informed and voluntary one; and the factual basis set

2   forth in this agreement is sufficient to support my client's entry of

3   guilty pleas pursuant to this agreement.

4

5   _____          ____6/13/25_____
    DEBRA S. WHITE                       Date
6   KAREN L. GOLDSTEIN
    Attorneys for Defendant SALVADOR
    PLASENCIA

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                            22