BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO (Cal. Bar No. 265481)
Assistant United States Attorney
Chief, National Security Division
HAOXIAOHAN CAI (Cal. Bar No. 331131)
Assistant United States Attorney
Major Frauds Section
     1500/1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:   (213) 894-3667/0762
     Facsimile:   (213) 894-0141
     E-mail:   Ian.Yanniello@usdoj.gov
               Haoxiaohan.Cai@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 24-236-SPG(A)-2 |
| Plaintiff, | GOVERNMENT'S OBJECTIONS TO THE PRESENTENCE REPORT |
| v. | |
| SALVADOR PLASENCIA, aka "Dr. P," | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Haoxiaohan Cai and Ian V. Yanniello, hereby objects to the Presentence Report (PSR) by the United States Pretrial and Probation

//

//

Office (USPPO) as to defendant SALVADOR PLASENCIA, Dkt. 89, filed on October 22, 2025.

Dated: November 5, 2025               Respectfully submitted,

                                     BILAL A. ESSAYLI
                                     First Assistant United States
                                     Attorney

                                     IAN V. YANNIELLO
                                     Assistant United States Attorney
                                     Chief, National Security Division


                                            /s/
                                      IAN V. YANNIELLO
                                     HAOXIAOHAN CAI
                                     Assistant United States Attorney

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  OBJECTIONS TO THE PRESENTENCE REPORT**

The government agrees with the PSR's ultimate Guidelines calculation: defendant's total offense level is 13 (after a three-level reduction for acceptance of responsibility) and defendant's criminal history places him in Criminal History Category I.  However, the government respectfully submits that two additional special offense characteristics apply to the Group 1 counts, namely, a two-level vulnerable victim enhancement under U.S.S.G. § 3A1.1(b)(1) and a two-level aggravating role enhancement under U.S.S.G. § 3B1.1. Thus, the government's calculation for Group 1 offenses is as follows:

| Group 1: Distribution of Ketamine | | |
|---|---|---|
| Base Offense Level (189 Units of Ketamine) | 6 | U.S.S.G. § 2D1.1(a)(6), 2D1.1(c)(17) |
| Vulnerable Victim | +2 | U.S.S.G. § 3A1.1(b)(1) |
| Aggravating Role | +2 | U.S.S.G. § 3B1.1 |
| Abuse of Position of Trust | +2 | U.S.S.G. § 3B1.3 |
| Obstruction of Justice | +2 | U.S.S.G. § 3C1.1 |
| Group 1 Offense Level | 14 | |

Notwithstanding the additional four levels the government believes should apply to Group 1, the combined adjusted offense level as calculated in the PSR nonetheless remains 16. However, as discussed below, the application of these enhancements makes defendant ineligible for safety valve relief and the zero point offender reduction.

3

### A. Defendant Was a Leader and Organizer of the Conspiracy

Contrary to the PSR's findings (PSR ¶ 50), defendant should have been assessed an additional two-level enhancement under U.S.S.G. § 3B1.1(c) because he was an organizer, leader, manager and supervisor who directed the activities of co-conspirator Mark Chavez and coordinated the criminal activity with co-conspirator Kenneth Iwamasa,[1] so that they could illegally distribute ketamine to Victim M.P. Specifically, the factors pertinent to aggravating role --- including defendant's exercise of decision-making authority, his recruitment of accomplices (i.e., co-conspirator Chavez), his claimed right to a larger share of the proceeds of the crime, and his degree of control and authority exercised over others --- all compel the application of this enhancement. See U.S.S.G. § 3B1.1(c) (Application Note 4.)

**Defendant Recruited, Organized, and Directed Chavez**

As recounted in their plea agreements, defendant was the one who recruited Chavez to provide ketamine for the conspiracy. Dkt. 76, at 8; see also United States v. Chavez, 24-CR-492-SPG, Dkt. 3, at 11 (stating that defendant called Chavez for help getting ketamine for a well-known actor who was "willing to pay a premium"). Defendant's recruitment of a co-conspirator to the scheme is alone sufficient to trigger the aggravating role enhancement. See, e.g., United States v. Dota, 33 F.3d 1179, 1189 (9th Cir. 1994) (defendant who recruited and supervised just one other person was properly assessed leadership role).

---

[1] Co-conspirators Chavez and Iwamasa have pleaded guilty in separate criminal cases, 24-CR-492-SPG, and 24-CR-408-SPG, respectively.

4

Defendant also exercised control and authority over Chavez. Defendant was the one who determined how much Chavez would be paid for the ketamine, and directed when and where Chavez would meet defendant to transfer the ketamine that defendant later distributed to Victim M.P. Dkt. 76 at 12 (Defendant texting Chavez: "If I can get you 2k would you meet me half way?").

Defendant's organizer and leadership role over Chavez is even more apparent when viewed in light of the profits defendant made from the scheme. While defendant received over $55,000 for selling ketamine to Iwamasa and Victim M.P., defendant only remitted a small portion of those proceeds, approximately a few thousand dollars, to Chavez. Compare Iwamasa, 24-CR-408-SPG, Dkt. 7, at 15 (describing defendant being paid more than $55,000 for ketamine), with Dkt. 76, at 12 (describing how defendant offered Chavez only $2,000). This disparity is much larger than the disparity the Ninth Circuit found to have justified a leader-organizer role in United States v. Govan, 152 F.3d 1088, 1096 (9th Cir. 1998) (applying enhancement where defendant retained approximately 60% of the purloined funds).

**Defendant's Training to Iwamasa Further Shows His Leadership Role**

Although the Court can apply the enhancement based on defendant's leadership role over Chavez alone, the Court may also base its finding on defendant providing Iwamasa training and equipment to administer ketamine to Victim M.P., despite defendant knowing the dangers of doing so.
As the facts that defendant and Iwamasa both admitted to in their respective plea agreements make clear, defendant knew that Iwamasa had no medical training or experience but nonetheless provided

5

syringes and training to Iwamasa so that Iwamasa could administer ketamine to Victim M.P. without medical personnel present. Defendant did so even though he was fully aware that ketamine injections "should be monitored by [a] physician when undergoing treatment as a safety measure." Dkt. 76 at 7. Nonetheless, defendant provided ketamine, syringes, and "gave instructions to [Iwamasa] about how to administer ketamine through an intramuscular injection, including where to make injections on Victim M.P.'s body." Iwamasa, 24-CR-408-SPG, Dkt. 7, at 10. Defendant's supervision was ongoing: after being informed by co-conspirator Iwamasa that he successfully injected Victim M.P. according to defendant's instructions, defendant said: "I have ideas on how to get consistent results." Id. at 12. Defendant training Iwamasa and transferring his medical expertise is another justification for the leader-organizer enhancement. See, e.g., United States v. Herrera, 974 F.3d 1040, 1047 (9th Cir. 2020).

### B. Defendant Took Advantage of a Vulnerable Victim

Contrary to the PSR's findings, the vulnerable victim guidelines should apply. (PSR ¶ 49.) That is because defendant fed into Victim M.P.'s addiction, mental health issues, and ruthlessly exploited it for his greed --- even when defendant knew that Victim M.P. was spiraling out of control.[2]

Section 3A.1.1(b)(1) allows a two-level increase "if the defendant knew or should have known that a victim was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). A vulnerable victim is one who is "unusually vulnerable due to age, physical or mental condition, or

---

[2] Several other sections of the PSR, which states that there is no "identifiable victim," should be corrected to identify Victim M.P. (See PSR ¶¶ 143, 143.)

6

who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 (Application Note 2). Although drug addiction is not, standing alone, sufficient to base the enhancement, addiction in conjunction with other factors --- like the defendant's targeted exploitation of the victim's addiction, or additional mental health issues of the victim --- warrants the enhancement. See, e.g., United States v. Guidry, 817 F.3d 997, 1009 (7th Cir. 2016) (applying enhancement where defendant used his knowledge that the victim was addicted to heroin and suffered withdrawals and preyed on her addiction for his own gratification); see also United States v. Amedeo, 370 F.3d 1305, 1317 (11th Cir. 1991).

Here, defendant was abundantly aware of Victim M.P.'s struggles with addiction --- that was precisely the reason defendant targeted him. In 2023, Victim M.P. wrote a memoir on his struggles with addiction and sobriety, which also addressed his decades' long battle with depression.[3] In addition to the information being well-known publicly, during the conspiracy defendant spoke with another patient directly about Victim M.P.'s struggles, noting that defendant believed Victim M.P. was spiraling out of control. Despite that fact, defendant nonetheless offered to continue selling ketamine to Victim M.P. Defendant's own words show he sought to exploit this vulnerability for profit, telling Chavez, "I wonder how much this moron will pay" and "Let's find out." Dkt. 30 at 6.

Defendant's awareness of Victim M.P.'s addiction was also clear from their encounters. For example, at one point during the

---

[3] "The One Where Matthew Perry Writes an Addiction Memoir," see https://www.nytimes.com/2022/10/23/arts/television/matthew-perry-friends-lovers-and-the-The big-terrible-thing.html

7

conspiracy, defendant went so far as to inject Victim M.P. in the back of a car parked in a public parking lot at an aquarium --- behavior so outside the bounds that even defendant Chavez censured him for "dosing people" in public. Id. at 16.  Defendant also injected Victim M.P. another time, causing Victim M.P.'s body to "freeze up," and defendant to say: "let's not do that again." Iwamasa, 24-CR-408-SPG, Dkt. 7 at 14.  But abandoning his Hippocratic oath in favor of dollar signs, defendant still offered to sell more ketamine to Victim M.P.  Specifically, approximately two weeks after injecting ketamine into M.P. and observing the adverse reaction, defendant told co-conspirator Iwamasa he had been "stocking up" ketamine and could resume selling if Victim M.P. wanted to purchase more. Id. at 15.  In fact, defendant had been calculating all along how he could monetize Victim M.P.'s addiction, urging co-conspirator Chavez to find a steady supply of ketamine because defendant thought "it would be best served not having [Victim M.P.] look elsewhere and [b]e his go to." Chavez, 24-CR-492-SPG, Dkt. 3, at 14.

## II.  DEFENDANT IS INELIGABLE FOR SAFETY VALVE RELIEF

Because defendant is a leader and organizer, he is not entitled to safety valve.  As a result, the government respectfully objects to Paragraph 48 of the PSR that finds that defendant meets requirement 4 of U.S.S.G. § 2D1.1(b)(18).  Defendant also has not yet truthfully provide to the government all information and evidence he has concerning the offense, and thus requirement 5 of the safety valve criteria is also not met. (PSR ¶ 48.)

//

//

**III. THE PSR CORRECTLY DETERMINES THAT DEFENDANT IS NOT ENTITLED TO THE ZERO POINT OFFENDER REDUCTION**

As the PSR correctly notes, defendant is not entitled to a two-point reduction under the zero point offender guidelines. As discussed above, the defendant was both an organizer and leader of the criminal conduct and exploited a vulnerable victim --- both of which independently disqualify defendant from receiving the zero point offender reduction.